IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MARY FRANCO,**

    **Plaintiff,**

vs.                                                                       No. 00cv0450 BB/JHG

**KENNETH S. APFEL,**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      This matter is before the Court on Plaintiff's (Franco's) Motion to Reverse or Remand Administrative Decision, filed October 25, 2000. The Commissioner of Social Security issued a final decision denying Franco's application for supplemental security income. The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to remand is not well taken and recommends that it be DENIED.

      Sanchez, now thirty years old, filed her application for supplemental security income on February 13, 1997, alleging disability since May 1, 1995, due to seizures and headaches. On June 10, 1998, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that although Franco's headaches and seizures were severe impairments they did not meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. The ALJ specifically reviewed Listings 1.00 and 11.00. The ALJ further found Franco retained the residual functional capacity (RFC) "to perform a wide variety of unskilled work at a light or

sedentary exertional level." Tr. 18.  As to her credibility, the ALJ found Franco's "testimony and other evidence [did] not credibly establish symptoms or functional limitations to the extent alleged."  Tr. 11.   Franco filed a Request for Review of the decision by the Appeals Council.  On February 22, 2000, the Appeals Council denied Franco's request for review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Franco seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must

meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse or remand, Franco makes the following arguments: (1) the ALJ erred at step five of the sequential evaluation process when he relied on the medical-vocational guidelines (the grids) to find she was not disabled; (2) the ALJ failed to discuss the

3

weight given to her treating physicians' opinions; (3) the ALJ's credibility finding was based on an invalid reason and must be reversed; and (4) the ALJ committed legal error when he considered her ability to run a household as evidence that she could perform the activities required in employment.

Franco argues the ALJ erred at step five of the sequential evaluation process when he relied on the grids to finds she was not disabled. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Table Nos. 1 & 2, Rules 201. 27, 202.20. As a general rule, the grids should not be applied conclusively "unless the claimant could perform the full range of work required of [the pertinent RFC] category on a daily basis and unless the claimant possesses the physical capabilities to perform most of the jobs in that range." *Ragland v. Shalala*, 992 F.2d 1056, 1058 (10th Cir. 1993). "[R]esort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain." *Id.* The grids may, however, be used to direct a conclusion if the claimant's nonexertional impairments do not significantly reduce the underlying job base. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995)(holding that the ability to perform a "substantial majority" of work in RFC assessment suffices for purposes of the grids). This is because only significant nonexertional impairments limit the claimant's ability to do the full range of work within a classification. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993).

In this case, the ALJ's reliance on the grids was proper because he determined that Franco's impairments did not limit her ability to work. *See Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1030 (10th Cir. 1994). The ALJ considered "the overall medical evidence, her physical examination reports, her conservative and largely effective treatment

4

regimen, and her relatively active and normal lifestyle to" reach this conclusion. Tr. 18. Substantial evidence supports the ALJ's finding.

The record indicates that, although Franco testified her headaches were severe, she reported she took Ibuprofen for her headaches. Tr. 215, 216. The frequency of Franco's visits to her health care provider is also not consistent with her subjective complaints that her headaches were severe. Additionally, the medical records indicate her "seizures" were well controlled when she was on Dilantin. Tr. 178, 180. Her February 20, 1997 electroencephalograph (EEG) was normal (no epileptiform activity was identified). Tr. 181. On May 15, 1997, Franco reported she had experienced four seizures in six months. Tr. 178. On November 26, 1997, Franco's treating physician's notes indicate the physician questioned whether Franco suffered from epilepsy versus "pseudoseizures," i.e. panic attacks or hyperventilation. Tr. 200. On that date, Dr. Bidnell wrote a letter indicating Franco could not drive or work at that time pending further testing. Tr. 199. Dr. Bidnell indicated it would take two to three months before more information would be available. On January 14, 1998, Franco's treating physician ordered more testing to rule out seizures and to rule out panic attacks. At that time, Franco reported that from 1989-1990 she had experienced two "episodes" and two to four episodes per month from 1991 to January of 1998. On February 4, 1998, Dr. Vickers admitted Franco to University Hospital for five days of video EEG monitoring. Tr. 202, 203. Dr. Vickers admitted Franco "to rule out epilepsy." *Id.* Dr. Vickers tapered Franco's Dilantin by the third day. *Id.* "Despite, this, she continued to have the 'light seizures' without evidence of generalization." *Id.* Franco reported she may have had a brief loss of consciousness following a feeling of butterflies in her stomach on the morning of the day prior to her discharge. *Id.* She summoned the nurse prior to the spell. The nurse reported

5

observing Franco's hand trembling for a few seconds. *Id.* There was no evidence of postictal confusion, tongue biting or incontinence. *Id.*

In addition, Franco reported her impairments did not affect her ability to care for herself, do yard work, laundry, wash dishes, vacuum, sweep, buy groceries, shop, go to the post office or bank, cook, handle her finances, drive, use public transportation, engage in recreational activities, visit friends, attend social functions, sit, stand, walk, kneel, squat, climb, bend, lift or reach. Tr. 73-77 (Function Report completed by Franco). Franco also testified she drove her three children to school. Tr. 217 . Accordingly, based on the record as a whole, the Court finds that the ALJ did not err when he relied on the grids to find Franco not disabled.

Franco's argument that the ALJ failed to discuss the weight given to her treating physicians' opinion is without merit. In an undated, handwritten "To Whom It May Concern" letter, Dr. Iqbal reported he was treating Franco for seizures and headaches and was adjusting her medicine to better control her headaches and seizures. Tr. 179. Dr. Iqbal further opined Franco was "**currently** unable to work" and it "might take 2-3 months to achieve better control of her headaches and seizures." *Id.* On November 26, 1997, Dr. Bidnell also submitted a handwritten letter stating Franco was being evaluated for "poorly controlled 'seizure-like' spells." Tr. 199. Dr. Bidnell indicated Franco would be seen at the Epilepsy Clinic and brain wave lab and she was not **"at that time** able to drive or work." *Id.* Dr. Bidnell also indicated more information regarding Franco's problem would be available in two to three months. *Id.*

Franco claims the ALJ did not give a legally appropriate reason for failing to give controlling weight to Dr. Bidnell's and Dr. Iqbal's opinions and, without explanation, accepted the opinions of the Social Security Administration's reviewing physicians that she could do many

6

jobs, as long as the jobs did not require climbing or working around hazards. Franco misconstrues the ALJ's Decision. The ALJ did not discount or disagree with her treating physicians' opinions but rather considered them along with all the other medical evidence. Dr. Bidnell and Dr. Iqbal opined that, until they could make a definitive diagnosis, Franco could not work or drive for two to three months. Both physicians indicated they would need two to three months to do further testing and to adjust Franco's medication for better control of her seizures. Neither physician opined that Franco was permanently unable to work. In fact, on May 19, 1997, Dr. Iqbal reported Franco's seizures were well controlled. Tr. 178. The ALJ relied on Franco's treating physicians' opinions to support his finding that Franco was not disabled. Substantial evidence supports this finding.

Franco's next argues the ALJ's credibility finding was based on an invalid reason. Franco argues the ALJ erred when he found she was not credible because he did not believe her complaints of seizures and headaches. Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)(ALJ found claimant not credible based on claimant's inconsistent statements regarding the frequency of seizures). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).

In his Decision, the ALJ found Franco's "testimony and other evidence [did] not credibly establish symptoms or functional limitations **to the extent** alleged." Tr. 11. In this case, the ALJ linked his credibility findings to specific and substantial evidence. Therefore, the Court finds no

7

error in the ALJ's credibility determination.

Finally, Franco contends the ALJ committed legal error when he considered her ability to run a household as evidence that she could perform the activities required in employment. The Court also finds this argument is without merit. The ALJ considered Franco's ability to run a household along with other factors to find she was not disabled. This was proper.

## RECOMMENDED DISPOSITION

The ALJ applied correct legal standards and his decision is supported by substantial evidence. Franco's Motion to Reverse or Remand Administrative decision, filed October 25, 2000, should be denied, and this case should be dismissed.

_____
**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.